COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
 MICHAEL SHAWN
 AUMOCK, a/k/a MICHAEL SHAWN AMOUCK,
  
                             Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                            
 Appellee.
 
 
 §
  
 §
  
 §
  
 §
  
 §
  
  § 
  
 
 
  
 No. 08-10-00093-CR
  
 Appeal from the
  
 Criminal
 District Court No. 4
  
 of Tarrant
 County, Texas
  
 (TC # 1164683D)
  
 
 


 

O
P I N I O N

            A Tarrant County jury found Appellant,
Michael Shawn Aumock, guilty of possession of methamphetamine, a controlled
substance, in an amount equal to 200 grams or more but less than 400 grams,
including any adulterants or dilutants.  See Tex.
Health & Safety Code Ann. § 481.115(a) & (e) (West 2010).  The jury assessed Aumock’s punishment,
enhanced by one prior felony conviction, at imprisonment for 60 years.  He now brings six issues before this Court.[1]  Finding no reversible error, we overrule
Aumock’s issues and affirm the judgment of the trial court.

EVIDENTIARY
SUFFICIENCY[2]

            In his fifth issue, Aumock argues
that the evidence adduced at his trial was factually insufficient to support
his conviction.  We must reject this
argument, however, because Texas criminal law no longer recognizes
factual-insufficiency claims.  Brooks v. State, 323 S.W.3d 893, 912
(Tex.Crim.App. 2010).  We overrule Aumock’s
fifth issue.

            In his sixth issue, Aumock argues that
the evidence adduced at his trial was legally insufficient to support his
conviction.  More specifically, he argues
that the evidence was insufficient to prove beyond a reasonable doubt that he “was
conscious of his connection to the contraband and . . . knew it was contraband.”

            Consistent with the Fourteenth
Amendment’s guarantee of due process of law, no criminal defendant may be
convicted of an offense and denied his liberty except upon proof beyond a
reasonable doubt.  In re Winship, 397 U.S. 358, 364 (1970).  In assessing the legal sufficiency of the
evidence, under the Fourteenth Amendment, to support a criminal conviction, we
consider all the record evidence in the light most favorable to the jury’s
verdict and determine whether, based on that evidence, any rational jury could
have found the defendant guilty of all the elements of the offense beyond a
reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  In that analysis, we take the elements of the
offense as they are defined by the hypothetically correct jury charge for the
case.  Villarreal v. State, 286 S.W.3d 321, 327 (Tex.Crim.App. 2009).  Such a charge is one that, among other
things, accurately sets out the law, is authorized by the indictment, does not
unnecessarily increase the State’s burden of proof or unnecessarily restrict
the State’s theories of liability, and adequately describes the particular
offense for which the defendant was tried. 
Malik v. State, 953 S.W.2d
234, 240 (Tex.Crim.App. 1997).

            The jury is the sole judge of the
weight and credibility of the evidence.  Brooks, 323 S.W.3d at 899.  Unlike jurors, we are not fact finders, and
we may not re-evaluate the weight and credibility of the evidence; rather, we
act only as a “final, due process safeguard” ensuring that the evidence is at
least minimally sufficient to reasonably support a finding of guilt beyond a
reasonable doubt.  Narvaiz v. State, 840 S.W.2d 415, 423 (Tex.Crim.App. 1992).

            The grand jury’s indictment charged
that, on or about July 2, 2009, Aumock “did . . . intentionally or knowingly
possess a controlled substance, namely methamphetamine, of two hundred grams or
more but less than four hundred grams, including any adulterants or dilutants .
. . .”  Texas Health and Safety Code
section 481.115(a), the statute under which Aumock was charged and convicted,
provides in relevant part that “a person commits an offense if the person
knowingly or intentionally possesses a controlled substance listed in Penalty
Group 1 . . . .”  Tex. Health & Safety Code Ann. § 481.115(a) (West
2010).  Section 481.102 defines “Penalty
Group 1,” and methamphetamine is one of the controlled substances listed
therein.  Tex. Health & Safety Code Ann. § 481.102(6) (West 2010).  Section 481.002(38) defines “possession” as “actual
care, custody, control, or management.”  Tex. Health & Safety Code Ann. §
481.002(38) (West 2010).  To establish
unlawful possession of a controlled substance, the State must prove that the
defendant intentionally or knowingly exercised care, custody, control, or
management over the contraband and that he knew it was contraband.  Dubry
v. State, 582 S.W.2d 841, 843 (Tex.Crim.App. 1979).  Section 481.115(e) provides that an offense
under Section 481.115(a) is a felony of the first degree if the amount of the
controlled substance possessed is 200 grams or more but less than 400 grams,
including adulterants and dilutants.  Tex. Health & Safety Code Ann. §
481.115(e) (West 2010).

            Given all the foregoing, the
hypothetically-correct jury charge for the possession offense charged in this
case would state the elements of the offense as follows:  (1) Aumock; (2) intentionally or knowingly;
(3) exercised care, custody, control, or management over; (4) methamphetamine;
(5) in an amount equal to 200 grams or more but less than 400 grams, including
any adulterants or dilutants; and (6) he knew it was contraband.  The question before us is whether, given the
evidence adduced at Aumock’s trial, any rational jury could have found him guilty
of all those elements beyond a reasonable doubt.

            At the guilt stage of Aumock’s trial,
the State presented five witnesses:  D.
S. Evans, Harold Cussnick, and Brian Clark, all Fort Worth police officers; Garrett
Hull, a former Fort Worth police officer; and Jason Allison, a forensic chemist
with the Fort Worth Police Department Crime Laboratory.[3]  Their testimony, viewed in the light most
favorable to the jury’s verdict, established the following.  On or about July 2, 2009, a confidential
informant told Fort Worth police that on that day a man named Shawn Aumock
would drive a white Subaru automobile from Plano “to a location [the police]
picked in Fort Worth,” and that he would be carrying a half-pound of
methamphetamine.  Shortly thereafter, several
Fort Worth police officers, some of them undercover, set up surveillance around
the intersection of South Hulen Street and Interstate Highway 30.  At approximately 5 p.m., Officer D. S. Evans,
in a marked patrol vehicle, spotted the white Subaru and began to follow
it.  Evans soon observed the driver of
the Subaru commit a traffic violation, to wit: changing lanes without
signaling.[4]  Evans activated his vehicle’s overhead lights
and stopped the Subaru in a private parking lot on the 2800 block of South
Hulen.  Evans exited his vehicle,
approached the Subaru on foot, and asked the driver, Shawn Aumock, who was
alone in the Subaru, for his driver’s license and proof of insurance.  Aumock had neither, so Evans wrote out a citation,
placed Aumock under non-custodial arrest, and took him to jail, where,
according to Evans, he could “take care of his citations directly.”[5],[6]  Immediately after Evans’ departure, the other
police officers in question, most of them undercover, approached Aumock’s Subaru
and had a certified police dog sniff the outside of the vehicle.  The dog “alerted” at an open window.  One of the officers, Brian Clark, then opened
the driver’s side door and discovered, in plain view, a clear plastic bag of a “crystal-like
substance” hanging out from under the dashboard behind the steering wheel.  Subsequent analysis of the substance in the plastic
bag revealed it to be approximately 221 grams (about a half-pound) of
methamphetamine, including adulterants and dilutants.

            After reviewing the evidence adduced
at Aumock’s trial, as we have set it forth, we conclude that a rational jury
could have found him guilty of all the elements of the offense as defined by
the hypothetically correct jury charge.  The
evidence showed that Aumock was the driver and sole occupant of the Subaru,
that the contraband was a “crystal-like substance” in plain view in that
vehicle, that the contraband was conveniently accessible to him, and that there
was a considerable amount of it.  We overrule
Aumock’s sixth issue.

THE CONFIDENTIAL INFORMANT

            In his first
issue, Aumock argues that the trial court erred, at the guilt stage, in denying
his motion to compel the State to disclose the identity of its confidential
informant.  Aumock argues that he made a
plausible showing that the informant could give testimony necessary to a fair
determination of his guilt or innocence. 
His argument proceeds as follows:

Here,
the contraband is found falling down from the dashboard [of Aumock’s car] but
there is no affirmative link to [him]. 
He makes no furtive gestures.  He
makes no res gestae statements.  There
are no fingerprints linking him to it. 
It is reasonable to hypothesize that the informant or some other person
put the contraband there to set up [Aumock]. 
The only way for [him] to further investigate and possibly find
exculpatory evidence would be through interviewing, questioning and
cross-examining the informant . . . .

 

            Texas Rule
of Evidence 508 provides a qualified privilege against the compelled disclosure
of an informant’s identity.  Rule
508(c)(2), relied upon by Aumock, provides, in relevant part, that,

[i]f
it appears from the evidence in the case or from other showing by a party that
an informer may be able to give testimony necessary to a fair determination . .
. on guilt or innocence in a criminal case, and the [State] invokes the
privilege, the court shall give the [State] an opportunity to show in camera
facts relevant to determining whether the informer can, in fact, supply that
testimony.

 

            Under Rule
508, a defendant bears the burden of making a plausible showing that the
informant could give testimony necessary to a fair determination of his guilt
or innocence.  Anderson v. State, 817 S.W.2d 69, 72 (Tex.Crim.App. 1991).  “The informer’s potential testimony must
significantly aid the defendant and mere conjecture or supposition about
possible relevancy is insufficient.”  Bodin v. State, 807 S.W.2d 313, 318
(Tex.Crim.App. 1991).

            In the trial
court, Aumock presented no evidence suggesting that he had been “set up” by
others.  We therefore conclude that his attempt
to make a plausible showing amounted to nothing more than conjecture or
supposition, and that the trial court did not abuse its discretion in denying
his motion to compel disclosure of the informant’s identity.  We overrule Aumock’s first issue.

MOTION TO SUPPRESS

            In his
second issue, Aumock argues that the trial court erred, at the guilt stage, in
denying his motion to suppress the methamphetamine found in his car.  Aumock argues, in effect, that the search of
his vehicle was unreasonable, and therefore in violation of the Fourth
Amendment, because:  (1) it was the fruit
of an unlawful stop; and (2) it was carried out without a warrant.  The record reflects that the trial court heard
Aumock’s motion to suppress during the guilt stage and that the court denied
the motion at the close of the evidence at the guilt stage.

            We turn
first to Aumock’s argument that the search of his car was unreasonable because
it was the fruit of an unlawful stop.  Aumock’s
argument proceeds as follows:

[Aumock] believes that the State failed to
prove that [he] committed a traffic violation, specifically that [he] failed to
signal a change of lanes under Texas Transportation Code art. [sic] 545.104.  [Officer Evans] testified that [Aumock] failed
to signal his turn signal [sic] to indicate a change of lanes from the right to
left.  The officer did not testify to how
[Aumock] allegedly failed to indicate a turn signal . . . .  A turn signal can be made with either
lighting signal lamps . . . or by using the hand or arm.

.  
.   .

 

[F]ailure to adduce evidence of the specific
failed acts renders the initial stop invalid . . . .

            

We reject this
argument, because it was not made in the trial court.  See
Tex. R. App. P. 33.1.

            We turn next to Aumock’s argument
that the search of his car was unreasonable because it was carried out without
a warrant.  A trial court’s ruling on a
motion to suppress is reviewed on appeal for abuse of discretion.  Ramos
v. State, 245 S.W.3d 410, 417-18 (Tex.Crim.App. 2008).  In other words, the trial court’s ruling will
be upheld if it is reasonably supported by the record and is correct under any
theory of law applicable to the case.  Id.

            As we
discussed above, in reference to Aumock’s sixth issue, the State presented evidence
at the guilt stage that Officer Evans stopped Aumock’s Subaru after he observed
Aumock commit a traffic offense, that Evans placed Aumock under non-custodial
arrest and took him to jail so that he could “take care of his citations,” that
other officers then had a certified police dog sniff Aumock’s vehicle, that the
dog “alerted” at an open window, and that the officers then opened the driver’s
side door and discovered contraband in plain view.  The trial court, as the fact finder on the
motion to suppress, was free to believe this evidence.  Assuming that the trial court believed this
evidence, could it have lawfully denied Aumock’s motion to suppress?  Yes, the trial court could have, for the
following reasons.  First, consistent
with the Fourth Amendment, a police officer may stop a motorist (or any other individual)
if the officer has a particularized and objective basis for suspecting the motorist
of criminality, and a traffic offense is, of course, a form of criminality.  United
States v. Arvizu, 534 U.S. 266, 273 (2002). 
Second, once Evans placed Aumock under non-custodial arrest and took him
away, the other officers were free to have the police dog sniff the Subaru, because
a dog sniff is not a search within the meaning of the Fourth Amendment.  United
States v. Place, 462 U.S. 696, 707 (1983). 
Finally, once the dog “alerted” at the car window, probable cause existed
to believe the car contained contraband,[7]
and the police were then free to search the car without a warrant, given that the
car was readily mobile and would certainly be driven away once Aumock returned.[8]  Pennsylvania
v. Labron, 518 U.S. 938, 940 (1996).

            In summary,
the trial court’s ruling denying Aumock’s motion to suppress is reasonably
supported by the record and is correct under a theory of law applicable to the
case.  We overrule Aumock’s second issue.

JURY INSTRUCTION

            In his third
issue, Aumock, citing Article 38.23 of the Texas Code of Criminal Procedure,
argues that the trial court erred, at the guilt stage, in denying his request
for a jury instruction on the legality of the State’s acquisition of the
contraband.  Amouck argues, somewhat
vaguely, that he “raised questions” about the legality of Evans’ stop of his
car and about the subsequent search of the car.

            Article
38.23 provides in relevant part:

In
any case where the legal evidence raises an issue [regarding the legality of
the State’s acquisition of evidence], the jury shall be instructed that if it
believes, or has a reasonable doubt, that the evidence was obtained in
violation of the [law], then and in such event, the jury shall disregard any
such evidence so obtained.

 

            Article
38.23 requires a jury instruction only if there is a genuine issue of material
fact.  Oursbourn v. State, 259 S.W.3d 159, 177 (Tex.Crim.App. 2008).  A defendant must meet three requirements in
order to trigger an Article 38.23 instruction:  (1) the evidence heard by the jury must raise
an issue of fact; (2) the evidence on that fact must be affirmatively
contested; and (3) the contested factual issues must be material to the
lawfulness of the challenged conduct in obtaining the evidence.  Madden
v. State, 242 S.W.3d 504, 510 (Tex.Crim.App. 2007).

            The record
reveals that the evidence at the guilt stage did not raise a genuine issue of material
fact regarding Evans’ stop of Aumock’s Subaru or the subsequent police search
of it.  Therefore, the trial court did
not err in denying Aumock’s requested instruction.  We overrule Aumock’s third issue.

MOTION FOR MISTRIAL

            In his
fourth issue, Aumock argues that the trial court erred, at the punishment
stage, in denying his motions for mistrial made during the State’s closing argument.  Aumock’s argument in his fourth issue proceeds
as follows:

[R]eversal
because of [the State’s] improper and inflammatory [closing argument] is the
only adequate remedy.  Any one of [the
State’s] inflammatory arguments would be grounds for reversal but, taken as a
whole it becomes painfully obvious that the prosecutor violated the spirit of
fair and justifiable argument and, along with the trial court’s failure to intervene
with a mistrial, denied [Aumock] a fair trial.

 

            Aumock’s fourth
issue concerns the following portion of the State’s closing argument at the
punishment stage:

The
State:  Should your verdict [on
punishment], the number [of years of imprisonment] that you assign to his
conduct, should it be to deter his behavior?  Well, you can try, but we’ve already tried to
deter his behavior here in the State of Texas on more than one occasion and it
hasn’t deterred his behavior.  However,
where I think deterrence does come into play is you’re deterring others like
him.

 

Defense
Counsel:  Objection.  That’s outside the record and that would be
having them base their verdict based on facts outside of this case.

 

The
Court:  Well, I’ll sustain it in
part.  Stay inside the record.  Okay.

 

The
State:  Send a message to the community.

 

Defense
Counsel:  Objection, Your Honor.  They’re not allowed to base their verdict on
anything but the facts of this case, not sending a message.

 

The
Court:  Sustained.

 

The
State:  Okay.  Let’s talk about rehabilitation.

 

Defense
Counsel:  A motion to disregard, Your
Honor.

 

The
Court:  The jury will disregard the last
statement of the prosecutor.

 

The
State:  All right.  You’re not going to deter him.  All right. 
Let’s talk about rehabilitation. 
You know, I just don’t think that this defendant really wants to go this
way.  He has already had multiple
opportunities to make better decisions and to change his life around.  He’s been on probation before, he’s been to
the penitentiary.

 

The
Court:  One minute.

 

The
State:  He has two young kids.  And he has continued to commit crimes since
they’ve been born.

 

            This really is about
punishment.  And as sympathetic as we may
be to his family, to his stepdad and his mother and his children, it’s really
just about punishment.  You need to go
back there and assign a number, assign a number to his conduct to send him a
message.

 

            Remember, this is not a victimless
crime.  You know that.  Your common sense tells you this is not a
victimless crime.  Not only do we have victims
in the community, his kids are victims. 
And you could never, ever convince me that just because a person has a
title of dad, that he is better off being around his children.  That is not always true.

 

            You heard his stepdad say, well, it’s
a do-as-I-say, not do-as-I-do.  Well, you
know what I think would be the best remedy for his children is for you to
assign a number to his conduct and send him away so that they see what the
consequences are.  You cannot go out and
continually commit crimes over --

 

Defense
Counsel:  Objection, Your Honor, as
basing the verdict on anything but the facts in this case and assigning it
based on somebody else -- somebody else besides Mr. Aumock.  I object to that.

 

The
Court:  Overruled.

 

The
State:  You cannot go out and commit
crimes over and over and over again without being punished.

            Again, while you’re assigning a number
to his conduct, you aren’t the ones really punishing him; it’s him doing it to
himself.  It’s him doing it to his
parents; it’s him doing it to his kids.

 

            As representatives of the State of
Texas, we have a duty and obligation to try to protect our community.  Okay.

 

            He’s dangerous, he is violent, he
does carry guns.  All right.  Now, has he killed anybody?  No. 
But when might that time come?

 

Defense
Counsel:  Objection, Your Honor, that’s
outside the record.

 

The
Court:  Sustained.

 

Defense
Counsel:  Motion to disregard.

 

The
Court:  Jury will disregard the last
statement of the prosecutor.

 

Defense
Counsel:  Motion for mistrial.

 

The
Court:  Overruled.

 

The
State:  Disregard that last part, right?  I’m just saying --

 

Defense
Counsel:  Objection, Your Honor, sidebar.

 

The
Court:  Sustained.

 

The
State:  He hasn’t been the worst person
in the entire world.  We’re not saying
that.  But he is a dangerous person and
he is a violent person, and we're asking you to take him off of our streets so
that you -- so that your children -- so that --

 

Defense
Counsel:  Objection, Your Honor.  She’s asking the Court to -- the jury to take
into account something that's outside the record and assigning it instead of
facts of this case.

 

The
Court:  Sustained.

 

Defense
Counsel:  Motion to disregard.

 

The
Court:  Jury will disregard.

 

Defense
Counsel:  Motion for mistrial.

 

The
Court:  Overruled.

 

            A mistrial
is the trial court’s remedy for improper conduct that is so harmful that the
case must be redone.  Hawkins v. State, 135 S.W.3d 72, 77
(Tex.Crim.App. 2004).  Only in extreme
circumstances, where the prejudice is incurable, will a mistrial be
required.  Id.  A trial court’s ruling
on a motion for mistrial will not be disturbed on appeal absent an abuse of
discretion.  Wead v. State, 129 S.W.3d 126, 129 (Tex.Crim.App. 2004).

            There are
four permissible areas of closing argument:  (1) summation of the evidence, (2) reasonable
deduction from the evidence, (3) answer to argument of opposing counsel, and
(4) plea for law enforcement.  Alejandro v. State, 493 S.W.2d 230, 231
(Tex.Crim.App. 1973).  Even if an
argument falls outside these four areas, it is not reversible error unless it
is extreme or manifestly improper, violative of a mandatory statute, or injects
new facts, harmful to the accused, into the proceeding.  Todd v.
State, 598 S.W.2d 286, 297 (Tex.Crim.App. 1980).  Moreover, an instruction to disregard will
cure any improper argument unless it is so inflammatory that its prejudicial
effect cannot reasonably be removed.  Nichols v. State, 754 S.W.2d 185,
199-200 (Tex.Crim.App. 1988).

            We have
examined the closing argument of which Aumock complains in his fourth issue,
and we find only one instance in which Aumock’s objection was not sustained by
the trial court.  Aumock does not explain
why the trial court erred in that one instance. 
And, in all the other instances, we do not find improper argument that
was so inflammatory that its prejudicial effect could not reasonably be removed
by an instruction to disregard.  In
short, we discern no abuse of discretion on the part of the trial court in its
denials of Aumock’s motions for mistrial. 
We overrule Aumock’s fourth issue.

CONCLUSION

            Having found
no reversible error, we affirm the judgment of the trial court.

                                                                        GUADALUPE
RIVERA, Justice

February 8, 2012

 

Before McClure, C.J., Rivera, J., and Antcliff, J.

 

(Do Not Publish)











[1]
The record reflects that the Texas Supreme Court transferred this case from the
Second Court of Appeals to this Court.  See Tex.
Gov’t Code Ann. § 73.001 (West 2005).





[2]
Because evidentiary sufficiency is a threshold issue, we address Aumock’s
sufficiency issues first.  See G. Dix & J. Schmolesky, Texas Practice: Criminal Practice and
Procedure § 51:4 (3rd ed. 2011) (appellate determination that evidence is
insufficient requires acquittal).





[3]  Aumock presented one witness, Jesus Cisneros,
who pleaded the Fifth Amendment and refused to testify.

 





[4]  “An operator shall . . . signal . . . to
indicate an intention to . . . change lanes . . . .”  Tex.
Transp. Code Ann. § 545.104(a) (West 2011).





[5]
A driver’s failure to carry a license is a misdemeanor offense for which he may
be arrested.  Tex. Transp. Code Ann. § 521.025 (West 2007).

 





[6]
Officer Evans’ testimony at the guilt stage included the following:

 

Q: 
Because [Aumock] was not able to provide you with [a driver’s license
and proof of insurance], what did you do?

 

A: 
Since he did not have a driver’s license on his person, I then detained
him in my vehicle and cash bonded him for his citations.

 

Q: 
When you say you “cash bonded him” for the citations, can you explain to
the jury why you did that?

 

A: 
Cash bonding is the noncustodial arrest, giving you a ticket or summons
for court.  Instead of giving them the
citation, you take them directly to the judge or the court or to jail,
basically, to where he has to pay for it or take care of his citations
directly.

 

It was implicit in Evans’ testimony that Aumock would
be returned to his Subaru and would be free to drive away once he had “take[n]
care of his citations.”





[7]
Probable cause sufficient to support a search exists if, under the totality of
circumstances, there is at least a fair probability that contraband will be
found at the specified location.  Flores v. State, 319 S.W.3d 697, 702
(Tex.Crim.App. 2010).





 

[8]
See footnote 6.