In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-22-00096-CR
NO. 09-22-00097-CR
_____

DYLAN GAUVIN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause Nos. 20-03-03470-CR and 20-03-03473-CR

**MEMORANDUM OPINION**

After Dylan Gauvin pleaded guilty, the trial court conducted a punishment hearing on trial court causes 20-03-03470-CR and 20-03-03473-CR, which resulted in Gauvin receiving concurrent, 15-year

1

sentences. Gauvin's convictions are based on indictments charging him with committing two robberies on March 9, 2020.[1]

Gauvin appealed. In Gauvin's first issue, he asserts that despite the failure of the attorney who represented him in his trial to object to the prosecutor's closing argument, the prosecutor argued facts outside the record and mischaracterized other "key facts in this case," which he argues harmed him by adversely affecting his sentence. According to Gauvin, had the prosecutor not made the improper arguments, the trial court would probably have given him a more lenient sentence. In Gauvin's second issue, he argues that when conducting his punishment hearing, the trial court failed to expressly pronounce that Gauvin had used a deadly weapon when he committed the robberies.

For the reasons explained below, we conclude Gauvin's issues lack merit. We will affirm.

## Background

Given the limited scope of the issues that Gauvin has raised in his appeal, we limit our discussion of the background to the information

---

[1]Tex. Penal Code Ann. § 29.03(a)(2).

required to explain the Court's resolution of the arguments Gauvin has relied on to support the point of error her raised in his appeal.

In March 2020, the State indicted Gauvin for committing two aggravated robberies, alleging that he committed both robberies on or about March 9, 2020. Both indictments allege that Gauvin used a deadly weapon in committing the robberies. As to the deadly weapon allegation in the respective indictments, they each state: ". . . and the defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm[.]"

After Gauvin signed judicial confessions in the two cases, which were based on a plea agreement, Gauvin appeared in court and pleaded guilty as charged to the allegations in the indictments. In the judicial confessions that Gauvin signed, which are in the Clerk's Record, Gauvin elected to have the trial assess his punishment.

In February 2023, the trial court conducted a punishment hearing to assess Gauvin's sentences. Seventeen witnesses were called as witnesses in the two-day hearing, eight by the State and nine by Gauvin. On appeal, Gauvin relies on three arguments to support his first issue, which asserts the prosecutor mischaracterized certain "key facts" in

closing argument. First, he claims that when the prosecutor made the following argument, he "mischaracterize[d] key facts[:]"

> In this case, I found it very, very sad that [two individuals that Gauvin robbed and who testified in Gauvin's punishment hearing] are just two blue-collared guys working a minimum wage job through COVID and they had a gun put in their face and when they came to testify, it's almost expected that if they were going to do that job, that, that's something they would encounter. I mean, they didn't have a lot of emotion because for them, that's part of it. If you work as a clerk at a gas station, you are going to get robbed. Hopefully, they just take the cash from the register and not the car [that was owned by the gas station's clerk].

Second, Gauvin claims that in rebuttal, the prosecutor made another argument, also unsupported by the facts in the record. As to that claim, Gauvin points to the prosecutor's argument, "it wasn't a drug-fueled crime that they [Gauvin] would have you believe. That's not what happened. He was making those decisions." In his brief, Gauvin argues that the record contains "uncontradicted testimony" that shows Gauvin "was on marijuana, percocets, and promethazine" when the robberies occurred. He also relies on testimony elicited in the hearing from his father, who testified that when Gauvin committed the robberies, he was "'probably under some influence'. . . because this is not what we taught him growing up."

4

Gauvin's attorney didn't object to any parts of the prosecutor's closing argument, including any argument the prosecutor presented during rebuttal. After the parties completed their arguments, the trial court advised the parties that after considering the evidence, the seriousness of the crimes, the impact it had on the victims, the age of the defendant, the defendant's presentence-investigation report, and the forms and letters submitted to the court, "it is the order of the Court that you will receive a 15-year sentence on each cause. They shall run concurrent. There is an affirmative finding as to the deadly weapon which will have a bearing on that sentence[.]" That same day, the trial court signed the judgments of conviction. The judgment in both cases contain an affirmative finding that Gauvin used a firearm when he committed the offense.

## Analysis

### *Closing Argument*

In Gauvin's first issue, he complains that in closing argument, the prosecutor "improperly argued facts not in evidence." According to Gauvin, the arguments the prosecutor made were either not based on facts supported by the evidence, or they mischaracterized the testimony

that was properly before the court and admitted into evidence during Gauvin's punishment hearing.

As mentioned, however, Gauvin didn't object to the prosecutor's arguments. As a prerequisite to presenting a complaint for appellate review, the record must show the complaint was made to the trial court in a timely request, objection, or motion.[2] "[A] defendant's failure to object to a [closing] argument . . . forfeits his right to complain about the argument on appeal."[3]

Gauvin concedes he failed to object to the arguments that he made the subject of his first issue, but he argues under the holding in *Janecka v. State*, we must nonetheless reach his complaint about the prosecutor's allegedly improper argument because the prosecutor's arguments, he claims, resulted in causing "egregious harm."[4] We disagree.

---

[2]Tex. R. App. P. 33.1(a); *Hernandez v. State*, 538 S.W.3d 619, 622 (Tex. Crim. App. 2018).

[3]*Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *Hernandez*, 538 S.W.3d at 622.

[4]*Janecka v. State*, 937 S.W.2d 456, 474 (Tex. Crim. App. 1996).

Nearly two decades ago in *Estrada v. State*, the Court of Criminal Appeals rejected an argument like the one Gauvin relies on here.[5] In *Estrada*, the Court of Criminal Appeals said:

> [A]ssuming, as appellant argues, that the prosecution's argument is so egregious that no instruction to disregard could possibly have cured the harm, then appellant should have moved for a mistrial to preserve the error.[6]

If any question remained about whether the usual rules of error preservation apply to preserve the right to complain on appeal about an opposing party's allegedly improper closing argument, the Court of Criminal Appeals answered that question eight years later in *Hernandez v. State*, 538 S.W.3d 619, 623 (Tex. Crim. App. 2018). In *Hernandez*, the appellant argued that even though he failed to properly preserve his complaint about the prosecutor's closing argument, the reviewing court should "hold that error preservation was not required here due to the egregious nature of the prosecutor's argument."[7] Responding to that argument, the Court of Criminal Appeals explained the usual rules of

---

[5]*Estrada v. State*, 313 S.W.3d 274, 303 (Tex. Crim. App. 2010) (cleaned up).

[6]*Id.*

[7]*Hernandez v. State*, 538 S.W.3d at 623.

error preservation still apply to errors that may be corrected because a defendant's right to have a trial free from error is not an absolute requirement like jurisdiction, which is a requirement that unlike other rights cannot be waived.[8] In rejecting essentially the same argument that Gauvin asks us to accept, the *Hernandez* Court held: "Erroneous jury argument must be preserved by objection pursued to an adverse ruling; otherwise, any error from it is waived."[9]

Gauvin concedes the attorney who represented him at trial didn't object to the prosecutor's closing argument. As an intermediate court, we are required to follow binding precedent in cases decided by the Court of Criminal Appeals.[10] Because Gauvin waived his right to raise the arguments on which he relies to support his first issue, the issue is overruled.

---

[8]*Id.* (citing *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993)).

[9]*Id.*

[10]*See* Tex. Const. art. V, § 5(a) (providing that the Texas Court of Criminal Appeals is the final authority regarding matters of criminal law); *State v. DeLay*, 208 S.W.3d 603, 607 (Tex. App.—Austin 2006), *aff'd sub nom. State v. Colyandro*, 233 S.W.3d 870 (Tex. Crim. App. 2007).

*Deadly-Weapon Finding*

In issue two, Gauvin complains "there was never an express deadly weapon finding" in either the hearing the trial court conducted to accept his plea or to assess his punishment. Gauvin asks the Court to reform the judgment and to delete the deadly weapon finding from the trial court's judgment. We decline to do so for two reasons.

First, we conclude the trial court made an express determination that Gauvin used a deadly weapon in committing the robberies. Generally, "[a]n affirmative deadly weapon finding must be an 'express' determination in order to be effective."[11] Gauvin argues the trial court did not expressly find that he used or exhibited a deadly weapon in the proceedings on his plea or when it assessed his sentence. The State, however, disagrees and points to the following language in the punishment hearing as the trial court's "affirmative finding" on the allegation in the indictments that Gauvin used a deadly weapon when he committed the robberies, noting the trial court said in sentencing Gauvin:

---

[11]*Guthrie-Nail v. State*, 506 S.W.3d 1, 4 (Tex. Crim. App. 2015).

9

"There is an affirmative finding as to the deadly weapon which will have a bearing on that sentence[.]"

In response to the State's argument, Gauvin contends that the trial court didn't make the above statement as an "affirmative finding[;]" instead, he claims the trial court's statement "appears to be referencing a deadly weapon finding[,]" which he claims the trial court mistakenly thought it made six months earlier in the hearing it conducted when it accepted Gauvin's guilty plea.

In our view, Gauvin is mistaken about the effect we must give to the statement the trial court made in the sentencing hearing, which was "[t]here is an affirmative as to the deadly weapon which will have a bearing on that sentence[.]" To be fair, the trial court could have made the statement in a way that would have left no doubt about how the trial court intended it's statement to be interpreted. For example, the trial court could have said something like—as to the indictments in trial court cause numbers 20-03-03470-CR and 20-03-03473-CR, I am finding that when Gauvin committed the offenses, he used or exhibited a deadly weapon as alleged in those two indictments.

10

But even though the trial court could have been clearer, construing the trial court's statement as an affirmative deadly weapon finding to the deadly weapon allegations in Gauvin's indictments is consistent with the judgments the trial court signed, particularly since the trial court signed them the same day it conducted Gauvin's the hearing in which it determined Gauvin's punishment. Thus, when considered as a whole, the record doesn't support Gauvin's theory the statement should be construed as a mistaken reference to some earlier affirmative finding, one that even Gauvin concedes the trial court did actually make when accepting Gauvin's plea.

Second, if the record didn't contain an express finding (and it does), the record in this case satisfies the "less explicit language" alternative that substitutes for the express determination requirements under the jurisprudence of the Court of Criminal Appeals.[12] Here, deadly-weapon allegations are included in both Gauvin's indictments. He signed a judicial confession in each case, pleading guilty to the allegations of aggravated robbery "as charged by the indictment[s]". The indictments

---

[12]*Id.*

11

allege that in the course of committing the thefts and with intent to obtain or maintain control of the property, Gauvin intentionally or knowingly threatened the respective victims of the robberies by placing them "in fear of imminent bodily injury or death, and the defendant did then and there use or exhibit a deadly weapon, to wit: a firearm[.]" The hearing on Gauvin's plea shows that in both cases, Gauvin pleaded guilty to the charges of aggravated robbery in trial court cause numbers 20-03-03470-CR and 20-03-03473-CR.

Thus, the record before us satisfies both the express determination requirement, and the conditions needed to satisfy the "less explicit language" alternative established by the Court of Criminal Appeals.[13] "[I]n a bench trial, a trial judge need not include a deadly-weapon finding in the oral pronouncement of judgment; if the charging instrument alleged a deadly weapon, the finding may be included for the first time in a written judgment."[14] The deadly weapon allegation is included in each indictment here.

---

[13]*Id.*; *see also Ex Parte Huskins*, 176 S.W.3d 818, 821 (Tex. Crim. App. 2005).

[14]*Guthrie-Nail*, 506 S.W.3d at 4.

For all these reasons, we overrule Gauvin's second issue.

Conclusion

Because Gauvin's issues were either not preserved or lack merit, the judgments in trial court causes 20-03-03470-CR and 20-03-03473-CR are

AFFIRMED.

HOLLIS HORTON
Justice

Submitted on August 4, 2023
Opinion Delivered September 13, 2023
Do Not Publish

Before Golemon, C.J., Horton and Johnson, JJ.